Stuart J. Miller (SJM 4276)
LANKENAU & MILLER, LLP
100 Church Street
8th Floor
New York, NY 10007
 P: (212) 581-5005

Mary E. Olsen (OLSEM4818)
M. Vance McCrary (MCCRM4402)
THE GARDNER FIRM, P.C.
182 St. Francis Street, Suite 103
Mobile, AL  36602
P: (251) 433-8100 F: (251) 433-8181

JUSTIN T. BERGER (SBN 250346)
jberger@cpmlegal.com
SARVENAZ "NAZY" J. FAHIMI (SBN 226148)
sfahimi@cpmlegal.com
COTCHETT, PITRE & McCARTHY, LLP
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

*Attorneys for Plaintiffs and the Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| SCOTT GUNDERSON, DANIEL PATTERSON, BEN LENAIL, BRENDAN KAYES, JAMES BUSTAMANTE, OCTAVI SEMONIN and ANNETT SUESS, on behalf of themselves and on behalf of all other persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ALTA DEVICES, INC,<br><br>Defendant. | Case No.: 5:19-cv-08017-BLF<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date: October 21, 2021<br>Time: 9:00 a.m.<br>Judge: Judge Beth Labson Freeman<br>Action Filed: December 6, 2019 |

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;**
Case No. 5:19-cv-08017-BLF

# **TABLE OF CONTENTS**

                                                                          **Page No.**
I.     INTRODUCTION ................................................................................1

II.    ISSUES ............................................................................................1

III.   FACTS .............................................................................................1

IV.    ARGUMENT.....................................................................................3

       A.     Alta violated the California WARN Act. ......................................3

       B.     Alta violated the Federal WARN Act. ..........................................6

       C.     The amount of the judgment. .......................................................9

V.     CONCLUSION..................................................................................11

# TABLE OF AUTHORITIES

**Page No(s).**

**Cases**

*Alarcon, et al. v. Keller Industries, Inc.*
27 F.3d 386 (9th Cir. 1994) ...................................................................7

*Barnett v. Jamesway Corp. (In re Jamesway Corp.)*
235 B.R. 329 (Bankr. S.D.N.Y. 1999) .....................................................8

*Childress, et al. v. Darby Lumber Inc., et al.*
126 F. Supp. 2d 1310 (D. Mont. 2001) ...................................................8

*Childress, et al. v. Darby Lumber Inc., et al.*
357 F.3d 1000 (9th Cir. 2004) ...............................................................7

*Ciarlante v. Brown & Williamson Tobacco Corp.*
143 F.3d 139 (3rd Cir. 1998) .................................................................8

*D'Amico v. Tweeter Opco, LLC (In re Tweeter Opco, LLC)*
453 B.R. 534 (Bankr. D. Del. 2011) .......................................................8

*Grimmer, et al. v. Lord Day & Lord, et al.*
937 F. Supp. 255 (S.D.N.Y. 1996) .........................................................9

*In re Organogenesis, Inc. v. Andrews*
316 B.R. 574 (Bankr. D. Mass. 2005) ....................................................8

*In re Quantegy, Inc.*
343 B.R. 689 (Bankr. D. Ala. 2006) .......................................................9

*Int'l Brotherhood of Boilermakers v. NASSCO Holdings*
17 Cal. App. 5th 1105 (Cal. App. 2017) .................................................4

*NASSCO*
17 Cal App. 5th at 1128 ........................................................................4

*Sides v. Macon Cty. Greyhound Park, Inc.*
725 F.3d 1276 (11th Cir. 2013) .............................................................9

*United Paperworkers Int'l Union v. Alden Corrugated Container Corp.*
901 F.Supp 426 (D. Mass. 1995) ...........................................................8

**Statutes**

29 U.S.C § 2101(a)(1) ............................................................................6

29 U.S.C. § 2101 ....................................................................................6

29 U.S.C. § 2101(a)(2) .......................................................................6, 7

29 U.S.C. § 2101(a)(6) ...........................................................................6

29 U.S.C. § 2102(c) ...............................................................................9

29 U.S.C. § 2104(a)(1) .........................................................................10

29 U.S.C. §§ 2101 ................................................................................................................... 1

California Labor Code § 1400 ................................................................................................ 1,5

California Labor Code § 1400(a) ............................................................................................ 3

California Labor Code § 1400(b) ............................................................................................ 4

California Labor Code § 1400(c) ............................................................................................ 4

California Labor Code § 1400(d) ............................................................................................ 4

California Labor Code § 1400(f) ............................................................................................. 4

California Labor Code § 1401(a) ............................................................................................ 3

California Labor Code § 1402 ................................................................................................. 10

California Labor Code § 1402.5 .............................................................................................. 5, 6

California Labor Code § 1402.5(a) .......................................................................................... 5

California Labor Code § 1402.5(a)(3) ..................................................................................... 6

California Labor Code § 1402.5(b) .......................................................................................... 6

U.S.C. § 2102(a) ..................................................................................................................... 6

# I. INTRODUCTION

The named Plaintiffs and the class whom they represent (the "Class") respectfully submit this brief in support of their motion for summary judgment on their claims against the defendant, Alta Devices, Inc. ("Alta") for violations of the federal Worker Adjustment and Retraining Notification Act of 1988, 29 U.S.C. §§ 2101 – 2109 (sometimes referred to herein as the "Federal WARN Act") and its California counterpart, California Labor Code §§ 1400 – 1408 (sometimes referred to herein as the "California WARN Act" and together with the Federal WARN Act, the "WARN Acts").

Based on undisputed facts, Plaintiffs and the Class are entitled to judgment in their favor if the Court determines that Alta violated <u>either</u> of the WARN Acts.

# II. ISSUES

The issues to be decided are:

(1)     Whether beyond a genuine issue of material fact, Alta violated the California WARN Act.

(2)     Whether beyond a genuine issue of material fact, Alta violated the Federal WARN Act.

(3)     What the amount of the judgment should be.

# III. FACTS

As this Court stated in certifying the class, "Defendant operated a facility at 545 Oakmead Parkway, Sunnyvale, CA (the "Facility") until the Facility was closed on or about October 21, 2019. Answer ¶ 5, ECF 48. Defendant employed Plaintiffs and members of the proposed Class (as defined infra, Section III) at that Facility until it closed. *Id.*" (Doc. 57, p. 2, lines 10-14). *See also* Doc. 48, Answer, ¶ 5 (Alta "admits that the facility closed; and avers that such closure occurred on or about October 21, 2019.").

Alta has also admitted that at the time it closed the Facility, it owed its employees unpaid earned wages which are still owed.  *See*, Alta Response to Requests for Admission, No. 27 attached to Declaration of Mary E. Olsen ("Olsen Declaration") as Exhibit 1; Declaration of Lyle Bautista ("Bautista Declaration") ¶¶ 3-6, 9, attached to Declaration of Mary E. Olsen ("Olsen Declaration") as

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

Exhibit 2; Declaration of Charles Marino ("Marino Declaration") ¶¶ 3, 5-6, 8-10 attached to the Olsen Declaration as Exhibit 3.

At relevant times, Alta employed at least 100 employees excluding any part-time employees, or at least 100 or more employees who in the aggregate worked more than 4,000 hours per year exclusive of overtime. *See*, Alta Responses to Requests for Admission, Nos. 1 and 2 attached to the Olsen Declaration as Exhibit 1.

Alta employed over 200 employees at the Facility who, collectively, worked over 8000 hours per week exclusive of hours of overtime. *See*, Bautista Declaration, ¶ 4, attached to the Olsen Declaration as Exhibit 2.

Nearly all of Alta's 260 or so employees at the Facility were laid off on October 15, 2019, and never recalled, although a group of about twenty remained on as an unpaid skeleton crew. *See*, Bautista Declaration, ¶¶ 3-4 attached to the Olsen Declaration as Exhibit 2; Marino Declaration ¶ 3, attached to the Olsen Declaration as Exhibit 3.

Well over one hundred of these employees who were laid off on October 15, 2019, and never recalled, had worked for Alta for more than a year prior to their layoffs and were salaried, which meant they worked at least forty hours per week. *See*, Bautista Declaration, ¶ 4 attached to the Olsen Declaration as Exhibit 2; Marino Declaration, ¶ 5 attached to the Olsen Declaration as Exhibit 3.

Alta's closure, which persists to this day, lasted well-over six months. *See*, Bautista Declaration, ¶ 3 attached to the Olsen Declaration as Exhibit 2; Marino Declaration, ¶ 3 attached to the Olsen Declaration as Exhibit 3; *see also* Alta's October 28, 2020, Response to Requests for Production, Nos. 1-35 ("Please note, Defendant's plant and office has been locked by the Sherriff of Santa Clara County since December 19, 2019.") attached to the Olsen Declaration as Exhibit 4.

Alta's Board of Directors resigned on October 28, 2019. *See*, Marino Declaration, ¶ 4 attached to the Olsen Declaration as Exhibit 3.

Alta did not give any advance written notice to the employees of their terminations, much less any WARN Act notice to employees concerning their layoffs or terminations or Alta's suspension of operations. *See*, Bautista Declaration, ¶¶ 3 and 8 attached to the Olsen Declaration as Exhibit 2; Marino Declaration, ¶¶ 3 and 8 attached to the Olsen Declaration as Exhibit 3. Instead, Alta told employees at

an "all hands meeting" on October 15, 2019 that there was no funding for payroll and to go home and not come back to work pending further updates. *See*, Bautista Declaration, ¶ 8 attached to the Olsen Declaration as Exhibit 2. The only place that Alta placed the "updates" about the status of the business was through postings on the ADP website. *See*, Bautista Declaration, ¶ 8 attached to the Olsen Declaration as Exhibit 2. These "update" postings were made after October 15, 2019 and none of the "update" postings were sent as emails to employees or in hard copy. *See*, Bautista Declaration, ¶ 8 attached to the Olsen Declaration as Exhibit 2.

Alta did not provide employees with any written notice that their layoffs would last beyond six months, nor did Alta provide employees with any written notice of the permanent shutdown of the Facility. *See*, Bautista Declaration, ¶ 8 attached to the Olsen Declaration as Exhibit 2; *See*, Marino Declaration, ¶ 8 attached to the Olsen Declaration as Exhibit 3.

Alta will not be able to establish that at the time of the October 2019 closure, or before that, it was even authorized to seek capital (as opposed to requests that its parent entity resume the infusions of cash that it had previously provided to Alta through a sister corporation) that would have allowed it to stay open. *See*, Marino Declaration, ¶ 7 attached to the Olsen Declaration as Exhibit 3. Further, prior to the closure, Alta did not seek or receive the advice of legal counsel concerning any actual or potential obligations under the federal or California WARN Act with regard to employee layoffs or terminations by Alta. *See*, Alta Response to Requests for Admission, Nos. 15-16 attached to the Olsen Declaration as Exhibit 1.

## IV. ARGUMENT

### A. Alta violated the California WARN Act.

On undisputed facts, Alta violated the California WARN Act.

Under California Labor Code § 1401(a), "An employer may not order a mass layoff, relocation, or termination at a covered establishment unless, 60 days before the order takes effect, the employer gives written notice of the order to" affected employees and various government entities and officials.

The Facility was a "covered establishment." *See* California Labor Code § 1400(a) (defining "covered establishment" as "any industrial or commercial facility or part thereof that employs, or has employed within the preceding 12 months, 75 or more persons."). *See*, Bautista Declaration, ¶¶ 2, 4

attached to the Olsen Declaration as Exhibit 2; Marino Declaration, ¶¶ 2, 5 attached to the Olsen Declaration as Exhibit 3.

Therefore Alta was an "employer." *See* California Labor Code § 1400(b) (employer is any person who owns and operates a covered establishment).

Alta ordered both a "mass layoff" and a "termination." It was a "termination" because it was "the cessation or substantial cessation of industrial or commercial operations in a covered establishment." California Labor Code § 1400(f).[1] Alta closed its facility and stopped all work – literally a cessation of its operations. Alternatively it was a "mass layoff." California Labor Code § 1400(c) ("layoff" is "a separation from a position for lack of funds or lack of work"); § 1400(d) ("mass layoff" is "a layoff during any 30-day period of 50 or more employees at a covered establishment."). Unlike the Federal WARN Act, the California WARN Act does not require notice only if a layoff exceeds six months in duration. *Int'l Brotherhood of Boilermakers v. NASSCO Holdings*, 17 Cal. App. 5th 1105 (Cal. App. 2017). *See*, Bautista Declaration, ¶¶ 2-4 attached to the Olsen Declaration as Exhibit 2; Marino Declaration, ¶¶ 2-3, 5 attached to the Olsen Declaration as Exhibit 3.

Alta did not provide any advance written notice of termination to any of the employees affected by Alta's shutdown in October 2019, much less any WARN Act notice to the employees concerning their layoffs or terminations or Alta's suspension of operations. *See*, Bautista Declaration, ¶¶ 3 and 8 attached to the Olsen Declaration as Exhibit 2; Marino Declaration, ¶¶ 3 and 8 attached to the Olsen Declaration as Exhibit 3. Therefore, Alta violated the California WARN Act. It truly is that simple.

If Alta claims that there were unforeseeable business circumstances which required it to order the shutdown without providing sixty days advance written notice, that is no defense to any requirement of the California WARN Act. As stated in *NASSCO*, 17 Cal App. 5th at 1127-1128, "[t]he California Legislature made a decision not to incorporate the federal law's unforeseeable circumstances exception and narrowed the federal exception to a "physical calamity or act of war." (§ 1401, subd. (c); see Sen. Com. on Labor & Industrial Relations, Analysis of Assem. Bill No. 2957 (2001–2002 Reg.

---

[1] "Cessation," in the plain meaning of that word, can be either temporary or permanent. See https://www.merriam-webster.com/dictionary/cessation. In any event, this was a permanent cessation of work. In fact, the last day for which employees were paid wages was September 28, 2019—some seventeen days before nearly all employees were told to go home on October 15, 2019 and never recalled.

4

Sess.) as amended June 17, 2002, p. 3 [in 'Background Responses,' deleting 'other unforeseeable circumstances' from proposed bill] and in doing so, the California Legislature made "a deliberate decision to shift the burden of unexpected, unplanned—even brief—work stoppages for 'lack of funds or lack of work' to the employer rather than to the employees (§ 1400, subd. (c)), and represents the Legislature's judgment that California employers, not California employees, should bear the risk of surprise resulting from an unexpected layoff." *Id*. at 1128.

Alta may also conceivably argue that it is entitled to the following defense set forth in California Labor Code § 1402.5:

(a) An employer is not required to comply with the notice requirement contained in subdivision (a) of Section 1401 if the department determines that all of the following conditions exist:

(1) As of the time that notice would have been required, the employer was actively seeking capital or business.

(2) The capital or business sought, if obtained, would have enabled the employer to avoid or postpone the relocation or termination.

(3) The employer reasonably and in good faith believed that giving the notice required by subdivision (a) of Section 1401 would have precluded the employer from obtaining the needed capital or business.

(b) The department may not determine that the employer was actively seeking capital or business under subdivision (a) unless the employer provides the department with both of the following:

(1) A written record consisting of all documents relevant to the determination of whether the employer was actively seeking capital or business, as specified by the department.

(2) An affidavit verifying the contents of the documents contained in the record.

(c) The affidavit provided to the department pursuant to paragraph (2) of subdivision (b) shall contain a declaration signed under penalty of perjury stating that the affidavit and the contents of the documents contained in the record submitted pursuant to paragraph (1) of subdivision (b) are true and correct.

(d) This section does not apply to notice of a mass layoff as defined by subdivision (d) of Section 1400

But Alta cannot take advantage of § 1402.5. The first reason is that Alta will not be able to show that it made the requisite evidentiary presentation to the State "department" that is responsible for such matters, or that the "department" made the determination that § 1402.5 applied. *See* § 1402.5(a) ("An employer is not required to comply with the notice requirement contained in subdivision (a) of

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

Section 1401 <u>if the department determines</u> that all of the following conditions exist …"); § 1402.5(b) ("<u>The department may not determine</u> that the employer was actively seeking capital or business under subdivision (a) <u>unless the employer provides the department with</u> both of the following …") (emphasis supplied).

Moreover, Alta could not show that § 1402.5 applied, on the facts. It will not be able to show that it was even authorized to seek capital (as differentiated from Alta's requests that its parent entity resume the infusions of cash that it had previously provided to Alta through a sister corporation), or business to avoid the closure. It will also not be able to show that it "reasonably and in good faith believed that giving the notice required by subdivision (a) of Section 1401 would have precluded the employer from obtaining the needed capital or business," § 1402.5(a)(3); indeed it will not be able to show that it even *considered* giving the required sixty day advance notice under the California WARN Act at all, much less that it actually and reasonably thought that giving such notice would interfere with the obtaining of any capital or business it was seeking.

For these reasons, Plaintiffs and the Class are entitled to summary judgment on the claim under the California WARN Act.

**B.      Alta violated the Federal WARN Act.**

Alta also, on the undisputed facts, violated the Federal WARN Act. Like the California WARN Act, the Federal WARN Act generally requires sixty days' advance notice of a covered event. *See* 29 U.S.C. § 2102(a) ("An employer shall not order a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such an order" to each affected employee (or their union if they have one) and to state and local government entities).

Alta was an employer under 29 U.S.C § 2101(a)(1), as it had the requisite number of employees.

This was a "plant closing." *See* 29 U.S.C. § 2101(a)(2) (defining "plant closing" as "the permanent or temporary shutdown of a single site of employment, or one or more facilities or operating units within a single site of employment, if the shutdown results in an employment loss at the single site of employment during any 30-day period for 50 or more employees excluding any part-time employees"). An "employment loss," as defined in 29 U.S.C. § 2101(a)(6), includes "(A) an employment termination, other than a discharge for cause, voluntary departure, or retirement, (B) a

layoff exceeding 6 months, or (C) a reduction in hours of work of more than 50 percent during each month of any 6-month period." On the undisputed facts, the shutdown "result[ed] in" (§ 2101(a)(2)) an employment loss for well over the requisite number.

Alta undisputedly did not give sixty days' advance written notice, or indeed any type of advance written termination notice at all, much less any WARN Act notice to the employees concerning their layoffs or terminations or Alta's suspension of operations. *See*, Bautista Declaration, ¶¶ 3, 8 attached to the Olsen Declaration as Exhibit 2; Marino Declaration, ¶¶ 3, 8 attached to the Olsen Declaration as Exhibit 3.

Controlling Ninth Circuit precedent forecloses the availability of the unforeseeable business circumstances exception (which is unavailable anyway under the California WARN Act, as shown above) and the faltering company exception under the facts of this case. First, the Ninth Circuit set out certain requirements in *Alarcon, et al. v. Keller Industries, Inc*., 27 F.3d 386 (9th Cir. 1994), for any employer seeking to shorten the sixty day notice requirement under WARN through invocation of either the "faltering company" exception, found at 29 U.S.C. § 2102(b)(1), or the "unforeseeable business circumstances" exception, found at 29 U.S.C. § 2102(b)(2)(A). Specifically, the Court held that:

> [t]hese exceptions allow covered employers <u>to give less than sixty days notice</u> under certain circumstances. <u>When the notice period is shortened pursuant to one of these exceptions, the employer must give as much notice as is practicable,</u> and "at the time notice actually is given, [<u>the employer must</u>] <u>provide a brief statement of the reason for reducing the notice period,</u> in addition to the other elements [of proper notice] set out in § 639.7."[2] 20 C.F.R. § 639.9. *See also* 29 U.S.C. § 2102(b)(3) (statement must give the "basis" for reducing the notification period).

*Id*. at 388-389 (emphasis added).

Some ten years later, the Ninth Circuit decided *Childress, et al. v. Darby Lumber Inc., et al.,* 357 F.3d 1000 (9th Cir. 2004). The trial court, whose rulings were affirmed in full by the Ninth Circuit,

---

[2] The elements of a WARN notice set forth in 20 C.F.R. § 639.7 are as follows—"(a) [n]otice must be specific" and-- with regard to unrepresented employees: "(d)(1) [a]statement as to whether the planned action is expected to be permanent or temporary and, if the entire plant is closed, a statement to that effect; (2) [t]he expected date when the plant closing or mass layoff will commence and the expected date when the individual employee will be separated; (3) [a]n indication whether or not bumping rights exist; (4) [t]he name and telephone number of a company official to contact for further information. . ."

held that Darby Lumber, the defendant employer in that matter, would still be liable for the alleged WARN violation, even if any of the statutory exceptions to the sixty day notice requirement applied, "because its notice was inadequate". *See Childress, et al. v. Darby Lumber Inc*., *et al*. 126 F. Supp. 2d 1310, 1317 (D. Mont. 2001). Thus, *Alarcon* and *Childress* foreclose any argument that an employer who gives <u>no advance written notice</u> (such as Alta) may invoke either the unforeseeable business circumstances exception or the faltering company exception. Further, Courts across the country have held that an employer that does not comply with that command of § 2102(b)(3) is, as a matter of law, precluded from invoking the "unforeseeable business circumstance" or "faltering company" provisions in litigation. *See*, *e.g*., *Ciarlante v. Brown & Williamson Tobacco Corp.*, 143 F.3d 139, 150 (3rd Cir. 1998) (explaining that "where there was no [notice] prior to the plant closing or mass layoff, . . . an employer [is] liable for an award covering the full 60-day period specified as a maximum violation period in the statute, rather than a shorter period."); *United Paperworkers Int'l Union v. Alden Corrugated Container Corp.,* 901 F.Supp 426, 440 (D. Mass. 1995) (where an employer has failed to provide any written notification pursuant to the "unequivocal mandate" of the WARN Act, "this failure alone would constitute sufficient grounds to deny the applicability of the exemption provisions"); *D'Amico v. Tweeter Opco, LLC (In re Tweeter Opco, LLC)*, 453 B.R. 534, 546-47 (Bankr. D. Del. 2011) (asset management company was not entitled to claim the faltering company exception to the WARN Act because it failed to explain the reduced notification period in termination notices it gave to employees); *Barnett v. Jamesway Corp. (In re Jamesway Corp.)*, 235 B.R. 329, 340 (Bankr. S.D.N.Y. 1999) (employer's failure to explain why it did not provide affected employees with the full sixty-day notice was "alone . . . grounds for finding that the [c]orrespondence does not provide WARN notice.") ; *In re Organogenesis, Inc. v. Andrews,* 316 B.R. 574, 584-585 (Bankr. D. Mass. 2005) ("The Debtor has admitted its failure to give any written notice whatsoever under the WARN Act to the Claimants. It cannot rely on the asserted defenses that require an employer to have given *reduced* notice as soon as practicable"; FN 11: "Even assuming without deciding that the September 20, 2002 memorandum notifying the Debtor's employees of their termination contained the elements of notice required by 20 C.F.R. § 639.7, it nonetheless fails to provide WARN Act notice. The memorandum failed to follow the mandate of 20 C.F.R. § 639.9, requiring a brief explanation for reduction of the 60-

day notice period. This failure alone is grounds to find that the memorandum does not provide sufficient notice."); *In re Quantegy, Inc.*, 343 B.R. 689, 695-96 (Bankr. D. Ala. 2006) ("Because the notice provided by Quantegy did not contain a brief statement of the basis for reducing the notice period, Quantegy is not entitled to rely on the defenses provided by the statute, and the plaintiffs are entitled to summary judgment on that issue."); *Grimmer, et al. v. Lord Day & Lord, et al.*, 937 F. Supp. 255, 257 (S.D.N.Y. 1996) (shortened notice allowed by § 2102(b) can <u>only</u> be invoked by an employer if the employer gives its employees the "reduced" notice as provided in § 2102 (b)(3) and 20 C.F.R. 639.9, including the specific facts that constitute the basis for reducing the notice period; "[s]uch a requirement focuses employers on the statutory conditions that must be met to reduce the notice period by prohibiting employers from relying on a vague justification for giving shortened notice. If an employer must set forth specific facts in its notice in order to rely on a statutory exception, it is more difficult for one who does not truly qualify for the exception to invoke it.")

> Alta may also try to invoke 29 U.S.C. § 2102(c), which provides:
> (c) Extension of layoff period. A layoff of more than 6 months which, at its outset, was announced to be a layoff of 6 months or less, shall be treated as an employment loss under this chapter unless—
>
> (1) the extension beyond 6 months is caused by business circumstances (including unforeseeable changes in price or cost) not reasonably foreseeable at the time of the initial layoff; and
> (2) notice is given at the time it becomes reasonably foreseeable that the extension beyond 6 months will be required.

But again, Alta gave no written notice that the extension would last beyond six months or that it would be permanent. So, these employees did indeed suffer employment losses, and Alta violated the Federal WARN Act.

For these reasons, Plaintiffs and the Class are entitled to judgment in their favor on the claim under the Federal WARN Act.

## C. The amount of the judgment.

As described herein, and based on undisputed facts, Plaintiffs and the Class are entitled to judgment in their favor if the Court determines that Alta violated either of the WARN Acts. Alta is liable to the Class for the full sixty days of the violation period under the WARN Act because it failed to give any advance written notice before terminating its employees and effectuating a plant closing.

Alta cannot avail itself of any reduced-notice provisions under §2102(b). The monetary relief to be awarded under the federal WARN Act is set forth in 29 U.S.C. § 2104(a)(1) and (2)[3]; the monetary relief under the California Act is set forth in California Labor Code § 1402. There is no material difference between the two for purposes of this case. Each provides for back pay for the period of the violation – in this case, sixty days – as well as the value of certain benefits, where applicable. WARN damages are essentially a matter of mathematical calculation and objective fact. See, 29 U.S.C. § 2104(a)(1) and (2); California Labor Code § 1402.

As set forth in the affidavit of Class Counsel, Mary E. Olsen and the supporting attachments, the amount to be awarded in this matter is Four Million Five Hundred Fifty-Six Thousand Two Hundred Ninety Dollars and Seven Cents ($4,556,290.07). See, Olsen Declaration, ¶¶ 4-18, and Exhibits 2A, 5-7.

Class Counsel have calculated the WARN wage damages for the Class, based on the California WARN Act and the Federal WARN Act. See, Olsen Declaration, Exhibit 5, "WARN Wage Damage Calculation Spreadsheet."

///

///

///

_____

[3] The damages provision of the WARN Act is set out in 29 U.S.C. § 2104 as follows: "(1) Any employer who orders a plant closing or mass layoff in violation of section 2102 of this title shall be liable to each aggrieved employee who suffers an employment loss as a result of such closing or layoff for—(A) back pay for each day of violation at a rate of compensation not less than the higher of—(i) the average regular rate received by such employee during the last 3 years of the employee's employment; or (ii) the final regular rate received by such employee; and (B) benefits under an employee benefit plan described in section 1002(3) of this title, including the cost of medical expenses incurred during the employment loss which would have been covered under an employee benefit plan if the employment loss had not occurred. Such liability shall be calculated for the period of the violation, up to a maximum of 60 days, but in no event for more than one-half the number of days the employee was employed by the employer." The California Labor Code § 1400 et seq. ("CAL WARN Act") contains a nearly identical damages provision to the Federal WARN Act. See, CAL WARN Act §1402.

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

## V. CONCLUSION

In view of the foregoing, Plaintiffs respectfully request that this Court grant Plaintiffs' Motion for Summary Judgment in its entirety, finding that Alta violated both of the WARN Acts and enter judgment against Alta, in favor of each and every Class Member shown on the WARN Wage Damage Calculation Spreadsheet, in the aggregate amount of Four Million Five Hundred Fifty-Six Thousand Two Hundred Ninety Dollars and Seven Cents ($4,556,290.07).

Dated: August 20, 2021                    **THE GARDNER FIRM, P.C.**

By: ___/s/ Mary E. Olsen_____
Mary E. Olsen
Vance McCrary
**THE GARDNER FIRM, P.C.**
182 St. Francis Street, Suite 103
Mobile, AL 36602
P: (251) 433-8100
F: (251) 433-8181

**COTCHETT, PITRE & McCARTHY, LLP**
JUSTIN T. BERGER (SBN 250346)
jberger@cpmlegal.com
SARVENAZ "NAZY" J. FAHIMI (SBN 226148)
sfahimi@cpmlegal.com
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

**LANKENAU & MILLER, LLP**
Stuart J. Miller (SJM 4276)
100 Church Street
8th Floor
New York, NY 10007
P: (212) 581-5005