**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| SCOTT GUNDERSON, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>ALTA DEVICES, INC.,<br><br>    Defendant. | Case No. 19-cv-08017-BLF<br><br>**ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR SUMMARY JUDGMENT; GRANTING PLAINTIFFS' ADMINISTRATIVE MOTION TO FILE UNDER SEAL**<br><br>[Re: ECF Nos. 60, 61] |

Plaintiffs Scott Gunderson, Daniel Patterson, Ben Lenail, Brendan Kayes, James Bustamante, Octavi Semonin, and Annett Suess have filed a Motion for Summary Judgment. ECF No. 61 ("Motion" or "Mot."). The Motion seeks summary judgment on both claims against Defendant Alta Devices, Inc. brought by Plaintiffs and the Class they represent for violations of the federal WARN Act, 29 U.S.C. §§ 2101-2109, and its California counterpart, Cal. Lab. Code §§ 1400-1408. *See id.* Defendant has not filed an opposition to the Motion. The Court finds this Motion suitable for disposition without oral argument and VACATES the hearing set for October 21, 2021. *See* Civil L.R. 7-1(b). For the following reasons, Plaintiffs' Motion is GRANTED.

**I. BACKGROUND**

Plaintiffs present the following facts in support of their Motion, which are undisputed given Defendant's failure to file an opposition. Defendant operated a facility at 545 Oakmead Parkway in Sunnyvale, California until about October 21, 2019, when the facility was closed. *See* ECF No. 48 ("Answer") ¶ 5. Immediately prior to the closure, Defendant laid off nearly all of its approximately 260 employees on October 15, 2019, without any prior written notice, stating to them at an all-hands meeting that there was no more funding for payroll and that they should go

home and not return to work until further notice. ECF No. 61-1 ("Olsen Decl.") Ex. 2, ¶¶ 3-4, 8. Those employees were never recalled. *Id.* ¶ 3. At the time of the closure, Defendant still owed these employees unpaid wages, which remain unpaid to this day. Olsen Decl. Ex. 3, ¶ 3. Plaintiffs calculate the amount of unpaid wages to be $4,566,290.07, based on payroll information kept by Defendant prior to the closing. Olsen Decl. ¶ 4-18 & Exs. 2A, 5-7.

Plaintiffs filed this case on December 6, 2019. *See* ECF No. 1. Plaintiffs filed a First Amended Complaint on June 23, 2020, *see* ECF No. 47, which Defendant answered, *see* ECF No. 48. The Court granted Plaintiffs' motion for class certification on May 19, 2021 and certified a class of all former employees of Defendant who worked at the Oakmead facility until they were laid off on or around October 21, 2019 due to the mass layoff event. *See* ECF No. 57 at 5 (providing the full class definition). This unopposed Motion followed.

## II. LEGAL STANDARD

"A party is entitled to summary judgment if the 'movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248–49.

The party moving for summary judgment bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party meets its initial burden, the burden shifts to the nonmoving party to produce evidence supporting its claims or defenses. *Id.* at 1103. If the nonmoving party does not

1  produce evidence to show a genuine issue of material fact, the moving party is entitled to
2  summary judgment.  *Celotex*, 477 U.S. at 323.  "The court must view the evidence in the light
3  most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor."
4  *City of Pomona*, 750 F.3d at 1049.  However, "the 'mere existence of a scintilla of evidence in
5  support of the plaintiff's position'" is insufficient to defeat a motion for summary judgment.  *Id.*
6  (quoting *Anderson*, 477 U.S. 242, 252 (1986)).  "'Where the record taken as a whole could not
7  lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'"  *Id.*
8  (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III. DISCUSSION

Plaintiffs seek summary judgment in their favor under both the federal WARN Act and the California WARN Act.  *See* Mot. at 1.  Because Plaintiffs have met their burden and Defendant has not opposed the Motion, the Court will grant summary judgment in Plaintiffs' favor.

### A. Federal WARN Act

The federal WARN Act prohibits an "employer [from ordering] a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such an order . . . to each affected employee . . . ." 29 U.S.C. § 2102.  Plaintiffs have established with undisputed evidence that each part of the federal WARN Act has been satisfied.  Defendant is an "employer" under the WARN Act because it employed 100 or more employees, excluding part-time employees.  *See id.* § 2101(a)(1)(A); Olsen Decl. Ex. 1 at RFAs 1-2.  The October 15 termination of Defendant's employees was a "plant closing" because it was a "permanent shutdown of a single site of employment" resulting in the termination of over fifty full-time employees.  *See* 29 U.S.C. § 2101(A)(2); Olsen Decl. Ex. 2 ¶ 3.  And Defendant has never disputed that it did not give 60 days' advance written notice of the terminations.  *See* Olsen Decl. Ex. 2 ¶¶ 3, 8; *id.* Ex. 3 ¶¶ 3, 8.

Even though Defendant has not filed an opposition, Plaintiffs preemptively argue that two exceptions to the 60-day notice requirement under the federal WARN Act do not apply, and so the Court addresses those exceptions.  First, the "faltering company" exception allows an employer to give fewer than 60 days' notice if it can show that when notice would have been required, it was "actively seeking capital or business which, if obtained, would have enabled the employer to avoid

or postpone the shutdown" and giving notice would have "precluded the employer from obtaining the needed capital or business." 29 U.S.C. § 2102(b)(1). The "unforeseeable business circumstances" exception allows fewer than 60 days' notice where the plant closing or mass layoff is "caused by business circumstances that were not reasonably foreseeable" at the time notice would have been required. *Id.* § 2102(b)(2)(A). As Plaintiffs point out, these two exceptions still require the employer to "give as much notice as is practicable," and when notice is given, to "provide a brief statement of the reason for reducing the notice period." *Alarcon v. Keller Indus., Inc.*, 27 F.3d 386, 388-89 (9th Cir. 1994) (citing 29 U.S.C. § 2102(b)(3)). Defendant gave no notice, as terminations occurred at the all-hands meeting on October 15.[1] Olsen Decl. Ex. A ¶ 3. Some courts have found that complete lack of notice forecloses reliance on the exceptions. *See, e.g.*, *United Paperworkers Int'l Union v. Alden Corrugated Container Corp.*, 901 F. Supp. 426, 440 (D. Mass. 1995). In this case, it suffices to say that Defendant (having not opposed Plaintiffs' motion) has not offered any evidence to rebut Plaintiffs' showing of a WARN Act violation or show that an exception applies. Accordingly, there is no triable dispute of material fact that Defendant violated the federal WARN Act.

### B.    California WARN Act

The California WARN Act is similar to the federal WARN Act in most respects. It also prohibits "[a]n employer [from ordering] a mass layoff . . . or termination at a covered establishment unless, 60 days before the order takes effect, the employer gives written notice of the order to . . . [t]he employees of the covered establishment affected by the order . . . ." Cal. Lab. Code § 1401. Defendant's facility that closed was a "covered establishment" because it employed 75 or more people, making Defendant an "employer." *See id.* §§ 1400(a)-(b); Olsen Decl. Ex. 1 at RFAs 1-2. And the October 15 firings were both a "termination"—because Defendant stopped operations at a covered facility, *id.* § 1400(f)—and a "mass layoff," because fifty or more employees were fired within a 30-day period, *id.* § 1400(d). Olsen Decl. Ex. 2 ¶ 3.

---

[1] Defendant's undisputed lack of written notice also forecloses reliance on the other exception Plaintiffs preemptively address. *See* 29 U.S.C. § 2102(c) (to prevent a greater than six-month layoff from becoming an employment loss, employer must give written notice "at the time it becomes reasonably foreseeable" that the layoff period will become longer than six months).

4

1  And as stated before, it is not disputed that Defendant did not give 60 days' advance written notice of the terminations. *See* Olsen Decl. Ex. 2 ¶¶ 3, 8; *id.* Ex. 3 ¶¶ 3, 8.

As Plaintiffs note, the exceptions under the California WARN Act are more limited, and in any case do not apply here. There is no "unforeseeable business circumstances" exception under the California WARN Act. *Int'l Brotherhood of Boilermakers v. NASSCO Holdings*, 17 Cal. App. 5th 1104, 1127-28 (2017) (noting that the exception is limited to a "physical calamity or act of war") (citing Cal. Lab. Code § 1401(c)). And similarly to the federal WARN Act, there is no triable issue of material fact that Defendant satisfies the "actively seeking capital or business" exception under the California WARN Act. There is no evidence to suggest that Defendant was "actively seeking capital or business," *see supra* Section III.A, or that it met the stricter provisions of the California WARN Act, such as providing written records to the California Department of Industrial Relations, to justify lesser or no notice. *See* Cal. Lab. Code § 1402.5(b); *see also* Cal. Lab. Code § 19 (defining "department").

Therefore, there is no triable issue of material fact that Defendant violated the California WARN Act.

## C. Damages

The only remaining issue is the amount of damages to which Plaintiffs and the Class are entitled. Under both the federal and California WARN Acts, Plaintiffs and the Class are entitled to up to sixty days of backpay plus certain other benefits if applicable. *See* 29 U.S.C. § 2104(a)(1)-(2); Cal. Lab. Code § 1402.[2] Backpay is calculated by reference to the higher of the final rate received by an employee or the average rate for the employee during the last three years of employment. 29 U.S.C. § 2104(a)(1)-(2); Cal. Lab. Code § 1402(a)(1).

Because Defendant did not oppose Plaintiffs' motion for summary judgment, the evidence that Plaintiffs submitted on damages is uncontroverted. Plaintiffs calculated damages based on payroll and employee information kept by Defendant prior to the closing of the site. *See* Olsen

---

[2] An employee may only recover backpay for one-half the number of days that the employee was employed with Defendant, if half the number of days worked is less than 60 days. *See* 29 U.S.C. § 2104(b); Cal. Lab. Code § 1402(b). Plaintiffs factor this limitation into their damages calculations. Olsen Decl. ¶ 14.

1  Decl. ¶¶ 6, 10-17 (describing the process for the calculation) & Ex. 5 (spreadsheet calculating
2  damages for the 253 class members). This calculation leads to a total of $4,556,290.07 in backpay
3  for the Class.
4        Plaintiffs' counsel notes that there is a circuit split regarding the method of calculation of
5  federal WARN Act damages under 29 U.S.C. § 2104(a)(1). The Ninth Circuit calculates backpay
6  based on the number of work days during a violation period, rather than the number of calendar
7  days. *See Burns v. Stone Forest Indus.*, 147 F.3d 1182, 1185 (9th Cir. 1998); *contra United*
8  *Steelworkers of Am. v. North Star Steel Co.*, 5 F.3d 39 (3d Cir. 1993) (adopting the calendar days
9  method). Plaintiffs' counsel calculated an employee's theoretical backpay by taking her wages
10 earned over the last 14-day pay period, dividing it by 14 days to obtain a "daily rate," and
11 multiplying that "daily rate" by 60 days. *See* Olsen Decl. ¶ 16. Plaintiffs' counsel says that by
12 dividing wages earned by 14 days, the resulting "daily rate" is actually "composite" of days
13 worked and not worked during the final pay period. *Id.* ¶ 17. This rate multiplied by 60,
14 according to Plaintiffs, represents the "best estimate[] of what total wages for the theoretical
15 workdays within a 60 day violation period would have been." *Id.* The Court finds that this
16 calculation method comports with the justification for using the work days method, which is to
17 award "a sum equal to what [the employee] normally would have earned" had the violation not
18 occurred. *Burns*, 147 F.3d at 1185 (quoting *Phelps Dodge Corp. v. NLRB*, 213 U.S. 177, 197
19 (1941)). By taking the amount earned over the last pay period, converting it to a "daily" amount
20 over that pay period, and multiplying that by 60, Plaintiffs provide the best approximation of what
21 an employee would have been paid over a 60-day pay period for however many days she worked
22 during that period. This does not overcompensate Plaintiffs (or amount to the "calendar days"
23 method disapproved of by the Ninth Circuit) because the "daily rate" is, as Plaintiffs say, a
24 "composite" of both days worked and not worked during the last pay period. The damages
25 calculations are appropriate.
26       In the absence of any opposition from Defendant, the Court thus accepts Plaintiffs'
27 damages calculations.
28

### IV. ADMINISTRATIVE MOTION TO FILE UNDER SEAL

In conjunction with their motion for summary judgment, Plaintiffs seek to seal three exhibits that contain personally identifying information of Class members, including their addresses, telephone numbers, and birthdates. *See* ECF No. 60. "Historically, courts have recognized a 'general right to inspect and copy public records and documents, including judicial records and documents.'" *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n. 7 (1978)). Parties seeking to seal judicial records relating to motions that are "more than tangentially related to the underlying cause of action" bear the burden of overcoming the presumption with "compelling reasons" that outweigh the general history of access and the public policies favoring disclosure. *Ctr. for Auto Safety v. Chrysler Grp.*, 809 F.3d 1092, 1099 (9th Cir. 2016); *Kamakana*, 447 F.3d at 1178–79. Courts have found compelling reasons to seal personally identifying information such as addresses and phone numbers. *See, e.g.*, *Benedict v. Hewlett-Packard Co.*, 2014 WL 233827, at *3 (N.D. Cal. Jan. 21, 2014) (granting motion to seal addresses and phone numbers). The Court finds that the information that Plaintiffs seek to seal in Exhibits 2A, 3A, and 6 is narrowly tailored and that there are "compelling reasons" for its sealing. Plaintiffs' Administrative Motion to File Under Seal is accordingly GRANTED.

### V. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) Plaintiffs' Motion for Summary Judgment (ECF No. 62) is GRANTED; and

(2) Plaintiffs' Administrative Motion to File Under Seal (ECF No. 60) is GRANTED. The following information shall remain under seal:

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

| Exh. No. | Document | Portion(s) to Seal | Reason(s) for Sealing |
|---|---|---|---|
| Olsen Declaration Exhibits 2A and 3A | "Final Alta Payroll" | Complete Document | Contains personal identifiers and sensitive information such as birthdates and addresses of Class members throughout the document. |
| Olsen Declaration Exhibit 6 | "Class Spreadsheet" | Addresses only | Contains addresses of Class members. |

A separate judgment will issue.

Dated: September 29, 2021

_____
BETH LABSON FREEMAN
United States District Judge